**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-00710-CMA-MJW

LET'S GO AERO, INC.,

    Plaintiff,

v.

AMAZON.COM, INC.,

    Defendant.

**REPLY IN SUPPORT OF AMAZON.COM, INC.'S MOTION TO STAY OR,
ALTERNATIVELY, TO ADMINISTRATIVELY CLOSE THE CASE PENDING ARBITRATION**

Defendant Amazon.com, Inc. now replies to plaintiff Let's Go Aero, Inc.'s ("LGA's") Response in Opposition to Amazon's Motion to Stay ("Opp.," ECF #22.)

## Introduction

Amazon moved for a stay, or administrative closure, because LGA chose to sue the manufacturer of the <u>same</u> products at issue here, Cequent, over four years ago, on the <u>same</u> legal claims it now asserts against Amazon.[1] That first-filed case is in arbitration, the parties concluded the final arbitration hearing on June 7, 2018, post-file briefing will conclude on October 5, 2018, and a final decision by the Arbitrator is expected in November 2018. For efficiency, fairness, and to avoid inconsistent judgments, this Court should stay this case until the arbitration concludes.

---

[1] LGA sued Cequent on June 6, 2014. (*See* Amazon Mot. to Stay, ECF #18, at p.3.)

## **Argument in Reply**

LGA tries several arguments against a stay. Each one fails.

**A.    LGA appears to agree that we should wait for the Arbitrator's decision.**

LGA's opposition predicted that the Arbitrator would be issuing his final decision within 30 days after the June 2018 hearing, *i.e.*, sometime in July 2018. (Opp. at 2). LGA asks this Court to wait for that decision before deciding whether to stay. Since LGA filed its opposition, the hearing was held during the first week of June. The Arbitrator, however, kept the hearing open for post-hearing briefing. The current briefing schedule has the Arbitrator issuing his decision in November 2018. While the timetable has changed, the logic behind LGA's point has not: because the decision will impact this case, we should wait for the decision before moving forward on the merits.

**B.    LGA's efficiency concerns are incorrect.**

LGA contends that a stay would be inefficient because, "even assuming Cequent prevails," closing out this case would require a "motion to re-open the case" and "dispositive motions." (Opp. at 2-3.) The cost of a motion to re-open the case, however, would be slight compared to the costs of full discovery on claims that likely will be mooted, decided, or precluded by the outcome of arbitration.[2] Dispositive motions will be filed in this case regardless of whether the case is stayed. Waiting for the Arbitrator's decision would reduce the cost of those dispositive motions because, at a minimum, the issues requiring briefing will be narrowed by the Arbitrator's decision.

---

[2] As shown in Amazon's opening brief, whether LGA wins or loses against Cequent, all of LGA's claims against Amazon will likely be precluded by the Arbitration ruling based on the single-recovery rule, res judicata, collateral estoppel, or the *Kessler* doctrine. (*See* Amazon Mot. at p.8, ECF #18.)

Moreover, LGA would not be prejudiced by the wait. By waiting about four years after suing Cequent to sue Amazon (and six years after the alleged infringement began),[3] LGA confirms there is no urgency. And LGA should not complain about having the Arbitrator decide these issues since it agreed to the arbitration clause with Cequent in the 2012 settlement. Nor should LGA complain about having its case against Cequent be the bellwether when it chose to sue Cequent first over four years ago.

**C.    All of LGA's claims, including the trademark claims, are related to the arbitration and will likely be resolved in arbitration.**

LGA argues the arbitration "cannot possibly resolve every claim here" because, according to LGA, the trademark claims[4] "are unrelated to the Cequent Arbitration and will not be resolved there no matter the outcome." (Opp. at 3.) While LGA challenges the trademark claims as "unrelated," it does not dispute that the Arbitrator's rulings on LGA's copyright and four design patent claims will likely have a dispositive effect on those legal claims here.[5]

### 1.    *Arbitration will decide LGA's SILENT HITCH PIN trademark claims.*

LGA's trademark-based claims are not "unrelated to the Cequent Arbitration," as LGA contends. In arbitration, LGA alleges that Cequent infringed LGA's SILENT HITCH

---

[3] LGA alleges that the infringement by Cequent and its customers occurred immediately after the 2012 settlement between Cequent and LGA was signed on January 28, 2012. (*See* Compl. ¶ 23, ECF #1.)

[4] LGA's trademark claims are Trademark Infringement and Unfair Competition (Count Three) and Passing Off (Count Four).

[5] LGA cannot dispute this because, for example, if the Arbitrator agrees with Cequent that the four LGA design patents are invalid under 35 U.S.C. § 102 due to Cequent selling the accused products prior to the patent filing dates, then those patents automatically drop out of this case. This is just one example of why a stay makes sense. Why should Amazon redo the two years of work that Cequent has done in arbitration to prove invalidity on these four patents when an invalidity ruling is forthcoming?

PIN trademark by using the term to refer to silent hitch pins sold by Cequent after the license ended. (*See* AAA Compl. ¶ 73, filed here as ECF #18-1.) Cequent's defense is that any uses of the term were for sales that LGA permitted with the 25,792 unit sell-off allowance in the 2012 settlement between Cequent and LGA, and that Cequent will pay damages on any sales over that sell-off allowance.[6]

LGA is suing Amazon for allegedly doing the same thing as Cequent: allegedly using the SILENT HITCH PIN term to resell silent hitch pins that Cequent sold to Amazon. (*See* Compl. ¶¶ 23-25, ECF #1.) For those pins that the Arbitrator decides were within the sell-off allowance, Amazon's resale of those pins would be licensed and not actionable as trademark infringement. And for those pins sold by Cequent to Amazon over the sell-off allowance, Cequent will have fully compensated LGA on those products by paying damages on the Arbitration award. Either way, LGA cannot seek damages from Amazon on its resale of those same products.[7]

### 2. *LGA's GEARCAGE trademark claims will be decided in arbitration.*

As to the GEARCAGE trademark, LGA alleges that Cequent infringed that putative trademark because assembly instructions for the product still had the old LGA

---

[6] The damages relating to the Silent Hitch Pin are relatively small, with Cequent's expert calculating $6,212 in total revenue on those excess sales and a $435 reasonable royalty figure (based on the 7% royalty from the 2008 license on that product between Cequent and LGA). LGA's damage expert calculated that Cequent's total sales were <u>under</u> the 25,792 phase-out allowance. So, using LGA's math, all sales by Cequent and Amazon would be licensed by LGA under the settlement, and thus not actionable against Cequent or Amazon as trademark infringement or otherwise.

[7] LGA's concern over Cequent's solvency is not realistic. Cequent, which is now known as Horizon Global Americas Inc., is owned by Horizon Global Corporation: a NASDAQ-traded company with almost $900 million in annual revenue and $661 million in total assets. (Information obtained from Horizon Global Corporation's 10-K for 2017.) So paying damages on silent hitch pin sales constituting, at most, $6,212 in revenue should not be a problem for Cequent.

"GearCage" term on them for some time after the Cequent-LGA license ended.[8] Cequent's defenses are that: (a) the use of those instructions inside closed boxes could not have confused customers, and therefore is not trademark infringement, because customers would have purchased the Cequent-branded product *before* seeing the instructions; (b) the instructions predominately displayed Cequent's PRO SERIES and CEQUENT trademarks, as well as Cequent's address and contact information, so there can be no likelihood of confusion regarding source; and (c) the GEARCAGE term is descriptive and thus not enforceable as a trademark, as confirmed by the Trademark Office refusing LGA registration on the principal register, and delegating it to the non-protectable *supplemental* register. 3 McCarthy on Trademarks and Unfair Competition § 19:43 (5th ed.) ("An application for registration on the Supplemental Register is an implied admission that [a] term is not inherently distinctive").

If Cequent prevails on its defense that GEARCAGE is not protectable, or that having the term on Cequent-labeled product instructions inside a closed box is not trademark infringement, then LGA's GEARCAGE claims against Amazon will be precluded. On the other hand, if Cequent's "GearCage" sales to Amazon are ruled infringing, then Cequent will have paid damages on those sales, and thereby relieved Amazon from any liability for reselling those products under the single-recovery rule. So,

---

[8] While LGA makes broad and non-specific allegations of GEARCAGE usage by Cequent and Amazon, the only usage evidence it produced at arbitration was the term appearing on instructions for assembling the product stuffed inside the closed box, which were unseen by customers until after their purchase.

no matter what, the trademark claims should drop out of this case based on the Arbitrator's ruling. So the non-patent claims favor a stay as well.[9]

### D. The arbitration will dispose of LGA's patent claims against Amazon on the Cequent products.

LGA contends that its claims for infringement of the '456 patent against Amazon will not be affected by arbitration because "the claim has been excluded from final adjudication for procedural reasons." (Opp. at 3.) This is untrue. LGA did attempt to withdraw the '456 patent from the arbitration to avoid the adverse judgment of non-infringement sought by Cequent. Cequent objected and demanded final judgment of non-infringement on that patent to obtain the preclusive effect needed to stop LGA from harassing Cequent customers and getting second and third bites at the apple.[10] LGA's claim for infringement of the '456 patent was presented at hearing and will go to final judgment by the Arbitrator. If judgment of non-infringement is entered on these bike racks, then LGA will be precluded from suing Amazon for infringement based on resale of those bike racks. (*See* cases cited in Amazon Mot. to Stay at 8, ECF #18.)

As for LGA's claim for indirect infringement on the '550 patent (the "silent hitch pin" patent), the arbitration will resolve those claims because those silent hitch pins within the sell-off allowance are licensed, and LGA will be compensated for sales

---

[9] LGA also asserts an unregistered "MOOVER" trademark, but it never produced any evidence in arbitration that Cequent, Amazon, or any other Cequent customer used that trademark in connection with Cequent products.

[10] Indeed, the timing of LGA's lawsuit against Amazon (six years after the alleged infringement began and four years after LGA sued Cequent on these sales) exposes that LGA now sees that its infringement claims on the '456 patent are about to fail at arbitration. LGA is trying to get a do-over by suing on the very same products on the same patent as the products travel downstream away from Cequent. The laws of preclusion do not permit multiple bites at the same infringement apple in this manner. (*See* cases cited in Amazon Mot. to Stay at 8, ECF #18.).

beyond the sell-off by Cequent paying an arbitration judgment to LGA. (*See supra* at p.4 & n.6, 7.)

E. **The fact that the law allows LGA to sue Cequent customers is irrelevant to whether the case should be stayed.**

Next, LGA argues that the law allows it to sue customers of alleged infringers. (Opp. at 4-5.) But Amazon's motion does not challenge LGA's *right to sue*. It merely seeks a stay of a case that LGA has commenced. Whether LGA has a legal right to sue Amazon is irrelevant to whether the case should be stayed after it is filed.

Similarly, LGA noting that it has not yet been paid any damages by Cequent misses the point. (Opp. at 5-6.) Amazon is not arguing that LGA's suit against Amazon is presently barred by the single-recovery rule. Amazon merely points out that that the case should be stayed because, if LGA prevails in arbitration, it will be fully compensated on these sales by Cequent, which has enough assets and income to pay any potential judgment in the arbitration. (*See supra* at p.4 & n.7.)

F. **Although not required to obtain a stay, there is an indemnity agreement between Amazon and Cequent.**

LGA argues that a stay should be denied because "Amazon has not affirmatively shown that Cequent must indemnify it for all of the claims asserted here, nor has Amazon stated in its motion that it would agree to be bound by any of the decisions reached in either proceeding." (Opp. at 6.) The Federal Circuit, however, has held that a customer need not agree to be bound by the manufacturer's case to obtain a stay when, as here, the major issues to be decided in the manufacturer's case will resolve the issues as to the customers. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir.

1990) (affirming enjoinment of suit against customer); *see also Ultra Prods., Inc. v. Best Buy Co.*, No. 09-1095 (MLC), 2009 WL 2843888, at *7 (D.N.J. Sept. 1, 2009) (granting stay where customer did not agree to be bound by results in other case and no indemnification agreement existed).

As to the indemnity issue—setting aside its questionable relevance to the stay motion—LGA knows that there is an indemnity agreement between Amazon and Cequent such that LGA suing Amazon over these products is tantamount to it suing Cequent a second time because: (i) LGA demanded and received the Cequent-Amazon indemnity agreement in arbitration,[11] (ii) LGA is also an Amazon customer, so it knows Amazon's standard terms require indemnification from vendors like Cequent, (iii) the undersigned attorneys (who represent Cequent in arbitration) are defending Amazon at Cequent's request, and (iv) the UCC imposes an implied warranty of non-infringement on sellers of goods like Cequent and LGA, *see* UCC § 2-312(3).

### G. **Any need for discovery in the *U-Haul* case can be dealt with there, if and when that case resumes.**

Lastly, LGA says a stay should be denied because "LGA will still need to take discovery from Amazon on its infringing sales [of Wyers pin products] when the *U-Haul* case restarts." (Opp. at 8.) A stay, however, would not deprive LGA of that information. LGA will learn how many hitch pins Wyers sold to Amazon through discovery requests that it will serve on Wyers if that case resumes.

---

[11] The indemnity agreement was bates labeled as CEQ-073151 to CEQ-073167 in Cequent's document production to LGA in the arbitration.

{7488341: }                                    8

There is no need to obtain the duplicative evidence of Amazon's records of its purchases from Wyers when LGA will obtain the evidence of Wyers' sales to Amazon directly from Wyers through discovery requests. Even if LGA were able to show a compelling need for the cumulative evidence of Amazon's purchases from Wyers, LGA never explains why it could not obtain those records in the *U-Haul* case by issuing a subpoena to Amazon. It's not a reason to move forward with full discovery in this case. Ironically, LGA's argument on this point confirms that the Wyers' hitch sales at issue in the *U-Haul* case are the same sales at issue here, which confirms the overlap of issues between the two cases that favors a stay.

### Conclusion

For these reasons, and for those offered in Amazon's opening brief, the Court should stay, or administratively close, the case until resolution of LGA's arbitration against Cequent and LGA's earlier-filed case against Wyers.

Dated:  June 15, 2018

Respectfully submitted,

  s/ Matthew J. Cavanagh
David B. Cupar (OH 0071622)
Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

*Counsel for Amazon.com, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 15, 2018, I electronically filed the foregoing with the Clerk of this Court using the CM/ECF system, which will electronically mail notice to the following:

Thomas Haskins
SILVER & DEBOSKEY
1801 York Street
Denver, Colorado 80206
t 303.399.3000
f 303.399.2650
thaskins@s-d.com

*Counsel for Plaintiff*

                                                         s/ Matthew J. Cavanagh
                                                        *One of the attorneys for*
                                                        *Amazon.com, Inc.*

{7488341: }